IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No.   02-cv-01459-WDM-MJW

CESAR R. PENA,

    Plaintiff,

v.

FRANCIS J. HARVEY, Acting Secretary of the Army,

    Defendant.

_____

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
_____

    Following pretrial rulings in this matter, a bifurcated trial was held before me without a jury on the issue of Defendant's liability for its alleged failure to afford Plaintiff appropriate preferences in consideration of hiring him to open secretarial positions in 2000 and 2001 at the United States Embassy in Uruguay.  After consideration of all of the evidence and the parties' arguments, I make the following findings and conclusions pursuant to Fed. R. Civ. P. 52(a):

<u>Findings of Fact</u>

    1.  Plaintiff, a native of Peru, is a naturalized United States citizen who served in the United States Army from 1977 to 1999.

    2.  Plaintiff's job duties in the army included infantryman, radio operator, platoon leader, instructor, inspector general staff work and general staff work.  In his last years of duty he was active as a liaison with foreign army officials from Latin America

countries. He achieved the rank of sergeant first class and was honorably discharged.

3. Plaintiff's native language is Spanish but he has fluency in English, achieving his GED in English, undergoing years of army training in English, and serving as a translator during his army career.

4. After retirement from the army, Plaintiff moved his family to Uruguay in 1999 and obtained a postal clerk position with the United States Embassy. In January 2000 he took a different position as part-time supervisor in the Army Post Office.

5. The Department of Defense, acting through the United States Office of Defense Cooperation, operated the embassy in Montevideo and the Defendant is the responsible party.

6. In February 2000, Defendant gave notice that it was hiring a secretary at the embassy at the GS6-1 salary level in accordance with regulation for "Overseas Appointment." Candidate requirements included passing a typing test "(minimum 25-35 wpm with good accuracy)." With regard to language skills, the notice provided: "Applicant should have Spanish conversation skills in order to handle telephone inquiries. English fluency is mandatory. Spanish fluency is highly desirable but not mandatory." Exhibit 5.

7. In February 2000, Plaintiffs submitted his application for the secretary position, indicating that he was entitled to a five point preference for his military service. *See* Exhibit 8.

8. At about the same time, a Marine guard at the Embassy, Brandy Crenshaw, applied for the position. Ms. Crenshaw was 22 and had been in the Marines for more

than three years when she applied, but she did not qualify for a veteran's preference. She did not have any adult work experience outside the Marines. She was not fluent in Spanish and, according to Plaintiff, had very poor verbal ability.

9. The person making the hiring decision was Colonel Randall James at the Embassy.

10. Before making a decision, Colonel James spoke with Cheri Kenyon, Chief of the Civilian Personnel Division, Director of Manpower and Personnel for the Army's United States Southern Command. Ms. Kenyon told Colonel James that the veteran's preference did not apply to the secretary selection because it was a limited overseas appointment.

11. When making the hiring decision in 2000 Colonel James gave no veteran's preference to the Plaintiff although he was aware of Plaintiff's veteran status.

12. Colonel James was familiar with both applicants from working with them at the Embassy.

13. Colonel James consulted with several staff officers who generally felt Ms. Crenshaw would be a better applicant.

14. Colonel James believed Ms. Crenshaw's Spanish language skills were adequate for the job.

15. The United States ambassador to Uruguay recommended Ms. Crenshaw to Colonel James.

16. Colonel James selected Ms. Crenshaw on March 30, 2000, noting that "her administrative and secretarial abilities made her stand out from the other applicants."

Exhibit A2.

17. Based upon his experience with both Plaintiff and Ms. Crenshaw, Colonel James did not feel Plaintiff was best qualified because his English language skills were lacking both in oral communication and written work product such as e-mails. He testified that Ex. 14, which contains several errors, was actually better than many of plaintiff's e-mails.

18. Colonel James testified that he would not select the Plaintiff for the secretarial position under any circumstances and would leave the job open if there was not a qualified applicant.

19. Neither Colonel James nor anyone else on behalf of Defendant filed with the Office of Personnel Management (OPM) or its delegate written reasons for passing over Plaintiff to hire Ms. Crenshaw.

20. Plaintiff was not provided a copy of written reasons for the pass over.

21. There is no evidence that OPM or its delegate ever determined whether any reason for passing over Plaintiff in 2000 was sufficient.

22. The record is not clear when the selection was made. Colonel James's selection memo is dated March 20, 2000. The Plaintiff's complaint to the Department of Labor (DoL) concerning denial of preference eligibility alleges the violation was on April 14, 2000. Exhibit 14. Defendant does not dispute this date of violation. Plaintiff's complaint is dated June 7, 2000, within 60 days of the undisputed violation date, but more than 78 days after the March 20, 2000 selection memo. The complaint was date-stamped by Defendant on June 16, 2000, four days after the sixty day deadline. *See*

Exhibit 14.

23. The DoL accepted Plaintiff's complaint without objection to its timeliness.

24. In response to the DoL inquiry, the Defendant acknowledged that it should have granted Plaintiff the veteran's preference and, accordingly, that it had not properly rated the applicants regarding veteran's preference. DoL suggested that the appropriate remedy for that failure would be to give Plaintiff priority consideration for the next available position. Exhibit 17.

25. On cross examination, Chris Kenyon agreed that resolving the issue of preference in favor of the veteran would be preferred and she acknowledged that the secretarial position was ultimately subject to the veteran's preference. *See* Exhibit 12.

26. On August 15, 2000, the DoL completed its investigation. It forwarded Exhibit 17 to Plaintiff, noting he would be given priority consideration for the "next appropriate position available under competitive procedures." It also notified the Plaintiff that he might bring his claim before the Merit Systems Protection Board. Exhibit 16.

27. Plaintiff did appeal to the Merit Systems Protection Board. An administrative judge found Plaintiff was entitled to preference but that he would not have been selected in any case. Plaintiff filed a petition for review but it was terminated by filing this action pursuant to 5 U.S.C. § 3330b.

28. Plaintiff left Uruguay in July 2000, and returned to the United States.

29. The same secretary position was again available in December 2001. Exhibit 19.

30. Plaintiff was given priority consideration before any other person was considered. Exhibit 22.

31. Colonel James again considered Plaintiff for the position but declined to accept him.

32. On December 21, 2001, the Defendant again announced the opening of the secretarial position. Again the army gave priority consideration to Plaintiff, and Colonel James again rejected him. Exhibit A3.

33. Colonel James selected a non-veteran, Lisa Kaputska.

34. Colonel James provided written reasons for his rejection of Plaintiff concluding he was unqualified at the end of 2001, because his English language and interpersonal skills were lacking. *See* Exhibit. 25.

35. There is no evidence that OPM or its delegate ever determined whether any reason for passing over Plaintiff in 2001 was sufficient.

36. Plaintiff was unaware of the subsequent secretarial openings and did not apply for the 2001 position. Further, he was given no notice that he was given priority consideration in each selection process or that he was rejected nor did he receive the reasons therefor.

37. Plaintiff first became aware of the subsequent openings on August 18, 2003, at the disposition of Colonel James. Plaintiff moved to amend his complaint on September 15, 2003, to include claims concerning the subsequent openings.

38. Plaintiff never filed a claim with the DoL concerning the 2001 pass-overs.

## Conclusions of Law

1. Contrary to defendant's assertion, Plaintiff properly exhausted his remedies for the 2000 opening by filing a complaint with the DoL within 60 days of the alleged violation as required by 5 U.S.C. § 3330a(a)(2)(A).  It is undisputed that Plaintiff mailed his complaint on June 7, 2000, 7 days before the undisputed 60-day deadline of June 14, 2000.  Plaintiff's complaint may have been date-stamped on June 16 which may or may not reflect the actual date of its receipt.  Under these circumstances I conclude that I should apply Fed. R. Civ. P. 6(e) which adds 3 days to a prescribed deadline when service is by mail.  The result would be June 17, 2000.  Consequently, accepting an actual filing date of June 16 would still be timely.

2. In addition, my September 29, 2004 Order on Motion for Summary Judgment concluded that Defendant's failure to reply to these facts constituted a confession or waiver of this particular issue.

3. As to the exhaustion of remedies concerning the 2001 selection, Colonel James, as the appointing authority, filed his reasons for passing over the Plaintiff with the OPM or its delegate as required by 5 U.S.C. § 33 18(b)(1) (*See* Exhibit 25), but the OPM or its delegate failed to send its findings following its review, if any, as required by the same statute.  Consequently, Plaintiff had no notice of this pass-over.  Under these circumstances, I conclude that the 60-day deadline for filing a claim set forth in § 3330a(a)(2) should be equitably tolled until Plaintiff knew or should have known of the pass-over.  *See Bagunas v. United States Postal Service*, 2004 WL 434054 (Fed. Cir. 2004); *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1273 (10th Cir. 2001) (claimant should not be denied the opportunity to make a claim because of the failure

of a governmental agency to perform its duty).

    4. It is undisputed that Plaintiff was unaware of the 2001 pass-over until the taking of Colonel James' deposition on August 18 2003, and, given the failure of the OPM or its delegate to notify the Plaintiff, nothing in the record would establish an earlier date when Plaintiff should have known of the pass-over. Accordingly, the deadline for filing a claim was equitably tolled until August 18, 2003.

    5. Although Plaintiff amended his complaint to include claims concerning the 2001 selection within 60 days, he never filed a written claim with the DoL as required by § 3330a(a)(2)(A). This failure precluded the exercise of the statutorily established administrative procedures to resolve the dispute prior to litigation. Whether as a matter of limitation or jurisdiction, the failure to timely file a complaint in order to exhaust administrative remedies precludes the Plaintiff from bringing his claim. *See Kirkendall v. Dep't of Army*, 412 F.3d 1273, 1276-77 (Fed. Cir. 2005); *Young v. Dep't of Army*, 2004 WL 2525855 (Fed. Cir. 2004).

    6. Because he was an honorably discharged veteran with more than three years of service, Plaintiff was eligible for the veteran's preference in hiring. *See* 5 U.S.C. § 3303(f)(1).

    7. As shown by the notice of vacancy (Exhibit 5) and as found by the DoL (Exhibit 16), applications for the 2000 secretarial position would be accepted from individuals outside the embassy's own work force and, hence, Plaintiff was entitled to be provided the veteran's preference in the selection for the position. 5 U.S.C. § 3303(f)(1).

8. Defendant violated the law by failing to grant the veteran's preference to Plaintiff.

9. Defendant also violated Section 3318(b)(1) by failing to file written reasons with the OPM for passing over Plaintiff as a preference eligible and having the OPM determine the sufficiency of the reasons submitted for passing over Plaintiff.

10. Given the advice Defendant received from Ms. Kenyon, the violations described above were not willful so as to trigger liability for liquidated damages under 5 U.S.C. § 3330c(a).

11. Plaintiff's statutory preference rights are rights described under 5 U.S.C. § 3330a.  Accordingly, Plaintiff is entitled to remedies provided in § 3330c.

12. Pursuant to the mandates of § 3330c, I order that the Defendant shall, within 20 days of this order, file with the OPM its written reasons for passing over Plaintiff in the 2000 selection and obtain from the OPM a determination whether the reasons so submitted are sufficient for passing over the Plaintiff in accordance with the procedures set forth in section 3318.

13. Within 15 days of receipt, the parties shall file the OPM findings in this proceeding, together with a statement proposing how this case should proceed, including any suggested further trial or hearing necessary to determine any further relief pursuant to § 3330c, including attorney fees, that may be necessary.

14. This case shall be administratively closed pursuant to D.C.COLO.LCivR 41.2 subject to being reopened by the filing of the OPM findings or other good cause.  If no filing or request to reopen is filed on or before July 25, 2007, this case may be

dismissed without further notice.

DATED at Denver, Colorado, on July 31, 2006.

BY THE COURT:

s/ Walker D. Miller
United States District Judge